# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **PATRICIA A. WESTMORE and** | **Case No. 14-CV-861** |
| **DWIGHT R. WESTMORE,** | |
| **Plaintiffs,** | |
| **v.** | |
| **DAVID HYDE,** | **MEMORANDUM OF LAW** |
| **CALLAE K. HYDE,** | **IN SUPPORT OF MOTIONS** |
| **SHERIFF MICHAEL W. BRENNAN,** | **IN LIMINE** |
| **DEPUTY TERRI L. PROVOST, and** | |
| **ASHLAND COUNTY, WISCONSIN** | |
| **Defendants.** | |

## FACTUAL BACKGROUND

Prior to December 22, 2013, the Plaintiffs had put their horses and a mule they owned in a series of small pens (made out of gates fastened together) intending to keep them there for the winter.  In December of 2013, the mule, Jethro, got caught in one of the gates, had gone down, and was dragged into a shed.  This ultimately resulted in a number of people coming to the Plaintiffs' residence to attempt to help the Plaintiffs with the injured mule.  That group included Gina Benson, who at least at one time had been involved in the operation of a horse rescue organization, her son Ty Irons, Veterinarian Leslie Szenay and a number of other people who went to the property in December to

attempt to help with the mule and, indeed, did use a "mechanical lift" to get the mule out of a recumbent position.

Shortly thereafter, Gina Benson called the Sheriff's Department to report animal abuse at the Westmore property. Callae Hyde, who is the humane officer for the county was between Wisconsin and Florida. Thus, she asked her husband, David Hyde, who works for the county in animal control to go to the property. While he commenced driving to the property, Ms. Hyde called and spoke with Dr. Szenay regarding her observations at the property.

She then called Mr. Hyde back to advise him that he should continue to proceed to the property to ask Mr. and Mrs. Westmore if they would be willing to allow him to look at the animals and, based upon his findings, if they would be willing to allow him to return the next day with two veterinarians to inspect the animals.

Mr. Hyde will testify that he was given such permission, and indeed, made arrangements to return to the property the next day with Officer Provost (a sworn law enforcement officer) and Veterinarian Szenay and Veterinarian Jahnke, to get their determination as to which animals, if any, had been abused and would be in imminent danger of death if not removed from the property due to a predicted intense cold spell. At the time of the inspection by the veterinarians, four horses were seized for the above reasons, as well as the mule, Jethro, who, given his condition, was immediately euthanized based upon the recommendations of the veterinarians. (All of these factual statements are developed and set forth in much more detail in the documents that have

been filed in regards to the Motions for Summary Judgment.   Thus, it is believed not
necessary to restate them in detail here.)

**<u>ARGUMENT</u>**

**1.     Testimony regarding the removal of and/or euthanization of the animals is irrelevant and should not be allowed.**

The Supreme Court has recognized that federal causes of action do not exist in
regards to alleged property damage or wrongful seizure of property, if the remedies
available under state law are sufficient.   See *Parratt v. Taylor*, 451 US 527 (1981).
Indeed, in *Mahnke v. Garrigan*, 2010 WL 2634618 (Western District of Wisconsin
2010).   It was recognized in a case that was remarkably similar factually that a federal
cause of action for the seizure of a horse did not exist since Wisconsin provided
appropriate state remedies for the taking of such animals.   For that reason, no federal
cause of action arising out of the taking of the involved animals exists and no testimony
regarding the same should be allowed.

**2.     Evidence of alleged excessive force should not be allowed.**

At the time of the filing of the original complaint and apparently at the time of the
taking of her initial deposition, the Plaintiff did not understand that at the time Jethro had
been seized she came in contact with Officer Provost, and both she and Officer Provost
fell to the ground.   When depositions of Deputy Provost and Mr. Hyde were taken and
she became aware of such facts, Plaintiff amended her complaint to assert a cause of
action for excessive force.   A second deposition was taken of her during which she
indicated she had no recollection of having fallen to the ground, nor of having suffered a

personal injury or bodily harm.  In order to establish use of excessive force, she needs to establish first of all that she suffered bodily injury.  Thus, the Plaintiff is simply unable to prove a cause of action for excessive force and any testimony regarding any contact between Officer Provost and Mrs. Westmore is irrelevant to any of the issues to be tried. It thus should be excluded.

### 3.     Federal Rules of Evidence 609 allows conviction of a crime only for purposes of impeaching a witness.

Mr. Hyde, in his deposition testimony, admitted that he was convicted of a crime in 1979 (D. Hyde depo, p. 5).  Pursuant to Rule 609(b), a conviction is not admissible if a period of more than ten years has expired.  Thus, any reference to said conviction is not properly admissible and should be excluded.

The Defendants do not intend to call either Gina Benson or her son, Ty Irons.  It is believed that the Plaintiffs do not intend to call them either.  Since they are not being called as a witness, and since no decision to seize the animals was made without the veterinarians determination, introducing evidence of the conviction of either Mrs. Benson or her son is irrelevant and immaterial to any issues involved.  Certainly, people who have been convicted of a crime have a right to report what they believe to be a crime. The Plaintiffs seek to introduce evidence of the conviction of Ms. Benson not to impeach her credibility (which was not involved in any of the factual decisions at issue herein), but rather, they intend to use it as an attempt to brand Dr. Szenay who was simply willing to come along and inspect and attempt to help the animals.

Thus, motions 3 and 7 should be granted.

4

6054540

**4.     Any and All Testimony by Plaintiffs about the Veterinarians that Plaintiffs Claim Were Caring for Their Horses and /or Donkey and/or Any Testimony about Supposed Diagnoses and/or Recommendations for Treatment Made by Said Veterinarians should be prohibited.**

Defendants move the Court to enter an order *in limine* excluding all evidence, testimony and/or references or arguments that it is anticipated Plaintiffs may try to make about the veterinarians that Plaintiffs claim were caring for or directing care for their horses and/or donkey and/or any testimony about supposed diagnoses and/or recommendations for treatment made by said veterinarians. Said anticipated claims do not have "any tendency to make a fact more or less probable," and thus are irrelevant under Fed. R. E. 401.

Additionally, said allegations are hearsay, and also require the opinions and testimony of experts.  Hearsay is prohibited under Fed. R. Ev. 802. Said allegations also do not meet any of the hearsay exceptions under Fed. R. Ev. 803. Plaintiffs have chosen not to disclose expert witnesses in this matter. Because said anticipated allegations do not meet any of the hearsay exceptions, said allegations should not be permitted before the jury.

**5.     Any and All Testimony, Exhibits, References and/or Arguments by Plaintiffs and/or their Attorneys and/or Witnesses Regarding Letters that Attorney Charles Harris sent to Plaintiffs' Counsel, dated April 11, 2014 and dated May 5, 2014.**

Defendants move the Court to enter an order *in limine* excluding all evidence, testimony and/or references or arguments by witnesses and/or Plaintiffs' counsel that Attorney Charles Harris sent letters to Plaintiffs' counsel on April 11, 2014 and May 5, 2014. Defendants are not responsible for actions taken by an attorney not hired by them.

6054540

Said anticipated testimony is not relevant, and is unduly prejudicial. Under Fed. R. Ev.

401 said information would not have any bearing on the facts or the issues before the

Court. Said information does not have any "tendency to make a fact more or less

probable than it would be without the evidence," and also is not of any "consequence in

determining the action." Fed. R. Ev. 401. Said information is also unduly prejudicial, and

would mislead and/or confuse the Jury and distract the Jury from the issues established

by case law. Said information would also waste time and is not of any probative or useful

value to the trier of fact. Fed. R. Ev. 403.

**6.    Any and all Testimony, Evidence, References and/or Arguments that Plaintiffs Did Not Consent to David Hyde Entering Their Property on the First Day, December 26, 2013.**

Defendants move the Court to enter an order *in limine* excluding all evidence,

testimony and/or references or arguments that Plaintiffs may claim they did not consent

to David Hyde entering their property on December 26, 2013.  On paragraph 18 of their

Complaint, Plaintiffs acknowledged that they gave consent to David Hyde to enter their

property on said day.  (Document #1.) As a result, it would be unfair prejudice, it would

also confuse the issues, mislead the jury and/or waste time under Fed. R. Ev. 403 and

should be excluded.

**7.    Any and All Exhibits and/or Testimony and/or References Regarding the Death of Blacky, the Horse, and/or its Cause of Death.**

The cause of Blacky's death requires an expert opinion made by a veterinarian.

Said information is scientific in nature and requires specialized knowledge. Plaintiffs did

not disclose any expert witnesses, let alone any veterinary witnesses.  As such, they

6054540

cannot prove that anything the Defendants did in any way caused Blacky's death.  Thus, any testimony regarding it is irrelevant.

**8.      Any and All Testimony, References or Arguments that Section 1983 Is Plaintiffs' Exclusive or Sole Remedy or that This Is Plaintiffs' Only Day in Court.**

Defendants move the Court to enter an order *in limine* excluding all evidence, testimony and/or references, or arguments that it is anticipated Plaintiffs may make regarding how Section 1983 is Plaintiffs' exclusive or sole remedy or that this is Plaintiffs "only day in court" or any other such similar allegations. Due process only requires an opportunity for the Plaintiffs to be heard that is "meaningful" in time and manner. *Parratt v. Taylor*, 451 U.S. 527, 530, 101 S. Ct. 1908, 1916 (1981). Additionally, adequate state remedies can satisfy the requirement of due process. *Enright v. Board of School Directors of City of Milwaukee*, 118 Wis. 2d 236, 251 (1984) (Citing, *Parratt v. Taylor*, 451 U.S. 527, 544, 101 S. Ct. 1908, 1917 (1981). Here, Plaintiffs were provided a remedy under Wis. Stat. §173.22 to petition the courts to have their horses returned to them quickly. Thus, if Plaintiffs attempt to make any references or provide any testimony that section 1983 is their exclusive or sole remedy and/or that this is their "only day in court" or any other similar allegations, said allegations are contrary to fact, to clearly established case law and are also unduly prejudicial, misleading and would confuse the jury under Fed. R. Ev. 403.

**9.     Any and All Evidence, Testimony, References, and/or Arguments that the Defendants Are Covered by or Protected by Indemnity or Liability Insurance or to Insurance Coverage.**

Defendants move the Court to enter an order *in limine* to exclude any references

by counsel and/or witnesses that Defendants have indemnity, liability, or any other type

of insurance coverage. Such references would include any statements that could or would

be reasonably calculated to inform, imply, or suggest to the Jury that Defendants are or

could be protected by insurance in this case. Said evidence is irrelevant to any issue the

jury needs to decide.

**10.     Wisconsin, like many states, has refused to extend the types of damages allowed to people to cases involving pets or animals.**

In the *Rabideau* case (cited in the Motion in Limine), the Supreme Court of

Wisconsin spent a significant amount of time discussing the close relationships that can

develop between people and the traditional pets we have.  In *Rabideau*, the pet was a dog,

and was far beyond just a pet since it was in addition a service dog, which performed

important functions in its owner's life above and beyond the companionship functions

performed by a dog who is "only" a pet.  However, even in *Rabideau*, the Supreme Court

held that it was not willing to treat a pet as anything other than "property" for damage

purposes.  Thus, the traditional law has always remained in Wisconsin, as in most states,

that the damages recoverable for the killing of a pet is its fair market value at the time of

its death.  In that respect, animals do not differ from an automobile.  If an automobile is

totaled, the damages are the value of it just before the accident and that is the price one

has to pay in order to "buy the vehicle" and make the Plaintiff whole.  Or, the Plaintiff

can elect to keep the salvage and damages will be measured by value before the accident, less value immediately after the accident.  In the case of property which is not totally destroyed, the measure of damages would be costs reasonably incurred to restore it to its previous condition (which cannot exceed the value of the replacement cost of the vehicle) and/or the value of the loss of use of the animal.  In the instant case, none of the animals were used for anything.  In any event, however, the feelings of Plaintiff regarding the taking of the animals, their absence, even their death, is of no relevance to any issue the jury needs to decide, and those things have absolutely nothing to do with damages.  Thus, any testimony regarding such issues should be prohibited.

## CONCLUSION

WHEREFORE, Defendant respectfully requests the Court to enter an order *in limine* consistent with the arguments set forth above, and for such other relief as the Court may deem just and proper under the circumstances.

ARTHUR, CHAPMAN, KETTERING,
SMETAK & PIKALA, P.A.

Dated: __4/18/16__

_____
Charles B. Harris (#1015879)
Jessica L. Ringgenberg (#1093944)
619 Second Street
Hudson, WI 54016
715-386-9000
cbharris@arthurchapman.com
*Attorneys for Ashland County, David Hyde,*
*Callae Hyde, Sheriff Brennan and*
*Deputy Provost*

6054540