IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PATRICIA A. WESTMORE and DWIGHT R. WESTMORE,

                            Plaintiffs,

    v.

DAVID HYDE and DEPUTY TERRI L. PROVOST,

                            Defendants.

OPINION AND ORDER

14-cv-861-wmc

---

This case is set for jury trial commencing May 23, 2016.  In advance of the final pretrial conference scheduled May 17, 2016, the court issues the following opinion on the parties' respective motions *in limine*.  (Dkts. ##64, 72, 78, 103.)[1]

## OPINION

### I.  Plaintiffs' Motions *in Limine*

#### A.  MIL to exclude expert opinion testimony ((dkt. #72) ¶ 1)

First, plaintiffs move to exclude any expert opinion testimony from Lesley Szenay, Heidi Jahnke, Callae Hyde and David Hyde, all of whom defendants named as experts under Federal Rule of Civil Procedure 26(a)(2)(C),  Having already denied plaintiffs' motion to strike affidavits and exhibits prepared by those same four witnesses on summary judgment, since plaintiffs failed to demonstrate that they were Rule

---

[1] Plaintiffs' motions *in limine* discussed below in subsections I(C) and I(D) were filed after the deadline established by the pretrial conference order, purportedly because they were "revised" based on the court's summary judgment order. Although both motions are entirely unrelated to plaintiffs' two timely filed motions, and nothing in these late-filed motions suggests that plaintiffs could not have filed them by the deadline, the court addresses and will deny these additional motions in the interest of efficiently resolving issues in advance of trial.

26(a)(2)(B) witnesses who were required to provide a more detailed expert report (5/6/16 Op. & Order (dkt. #93)), there is little more to the pending motion.  Still, in addition to citing Rule 26(a)(2) and Rule 37, plaintiffs argue that the four witnesses should not be permitted to offer expert opinion testimony under Federal Rules of Evidence 602, 701 and 702.

The gist of plaintiffs' "new" argument is essentially the same as the last:  the expected opinion testimony of the four witnesses is inadmissible "because it is not based on personal knowledge, does not qualify as lay opinion, and is not qualified by knowledge, skill, experience, training or education."  (Pls.' Br. (dkt. #72) at 2.)  Plaintiffs even acknowledge that the grounds for this motion *in limine* are more fully set forth in their now-rejected motion to strike, going so far as to incorporate expressly the arguments made in that motion by reference.[2]

With respect to both their motion *in limine* and motion to strike, plaintiffs do not challenge the scientific or specialized knowledge of defendants' experts, and while plaintiffs' arguments regarding the reliability of the experts' opinions based on the BCS system are appropriate for the jury, they fall short of establishing a basis to exclude those opinions altogether.   Since plaintiffs have presented no reason to exclude opinion testimony from defendants' experts wholesale, beyond those already rejected by this court on summary judgment, their motion will be DENIED.

---

[2] In their earlier motion, plaintiffs only (1) challenged the opinions stated by defendants' experts on the basis that their "claimed expertise" was insufficient to qualify them as experts under Rule 702 and (2) attacked the reliability of the Henneke Body Conditioning Scoring ("BCS") system, a method on which they relied to evaluate the condition of plaintiffs' animals.  (Pls.' Opening Br. (dkt. #55) at 21-22.)

**B. MIL to exclude testimony from late-disclosed witnesses and untimely discovery ((dkt. #72) ¶ 2)**

Next, plaintiffs move to exclude testimony from witnesses that defendants did not disclose in their Rule 26 initial disclosures, as well as any evidence gathered from depositions defendants noticed after the close of discovery. In response, defendants represent that no depositions will be taken after the discovery deadline, rendering that portion of plaintiffs' motion moot.

Defendants further acknowledge their failure to identify by name in their initial disclosures four witnesses they now intend to call at trial, but argue that the court should nevertheless allow those witnesses to testify. As an initial matter, defendants argue that plaintiffs have long been aware of two of the witnesses, Jim Mineau and Lance Goetlich, by category, if not by name, since defendants listed as potential witnesses in their initial disclosures "unknown neighbors" who "may have been present on Plaintiffs' farm on December 27, 2013 and/or other dates and could have relevant information related to these proceedings." (Defs.' Rule 26 Initial Disclosures (dkt. #10-1) at 5.) Furthermore, with respect to Mineau and Goetlich, plaintiff Patricia Westmore referenced them by name in a Facebook post on December 22, 2013, and again mentioned both of them at her deposition.

Even assuming that plaintiffs were generally aware of their neighbors, including Mineau and Goetlich, defendants offer no good reason for failing to provide any supplemental notice informing plaintiffs that defendants now viewed those specific individuals as potential witnesses for trial, or at least a more detailed description than is in defendants' initial disclosures regarding the roles unnamed neighbors played in the

material facts surrounding this lawsuit.  Given the defendants lack of explanation, the court agrees with plaintiffs that defendants use of Mineau and Goetlich as trial witnesses would violate both the letter and spirit of Rule 26.  *See* Fed. R. Civ. P. 26(a)(1) advisory committee's note to 2000 amendment ("The disclosure obligation attaches both to witnesses and documents a party intends to use and also to witnesses and to documents the party intends to use if -- in the language of Rule 26(a)(3) -- 'the need arises.'"). Accordingly, this portion of plaintiffs' motion will be GRANTED.

Defendants also argue that they adequately disclosed Deputy Bruce Joanis as a witness in their initial disclosures by attaching Callae Hyde's incident report, which states that Joanis explained to Patricia Westmore on January 16, 2014, that she needed to "listen . . . so she could change her situation to be in accordance with the law." (Defs.' Opp'n Br. (dkt. #90) at 4 (alteration in original).)  The court disagrees that a reference to Joanis in Callae Hyde's incident report is sufficient alone to excuse their failure to identify him as a potential witness, especially since they had full knowledge of his name and role at the time of their initial disclosures.  Moreover, defendants only assert that Joanis's testimony would be relevant to Patricia Westmore's retaliation claim, on which the court granted summary judgment in defendant's favor.  (5/6/16 Op. & Order (dkt. #93).)  Even if the court were to excuse defendants' failure to disclose Joanis, therefore, his testimony is no longer relevant to any of the issues remaining in this case. Accordingly, this portion of plaintiffs' motion will also be GRANTED.

Finally, defendants do not even argue that plaintiffs were (or should have been) aware that they may call Deputy Jon Pillath as a witness at trial.  Instead, defendants

4

assert that Pillath would only be offered to rebut expected testimony from plaintiffs that a photo of Blacky, plaintiffs' horse that died after being seized, was an accurate depiction of the horse's condition at the time plaintiffs retrieved its body.  Since Blacky's death is not relevant to defendants' liability, but arguably relevant to damages, *see* discussion, *infra*, II.H., this portion of plaintiffs' motion will be GRANTED as to the liability phase, but the court will RESERVE as to the damages phase.

### C. MIL to exclude all evidence of defendants' observations of the conditions of plaintiffs' animals ((dkt. #103) ¶ 1)

Plaintiffs also seek an order excluding any evidence of defendants' observations of the conditions of plaintiffs' animals on December 26 and 27, 2013, arguing that "such evidence is not relevant to the issues of consent, and would be unfairly prejudicial to plaintiffs."  (Pls.' Br. (dkt. #103) at 2.)   Plaintiffs' argument fails to appreciate that evidence of the conditions of their animals may be relevant during the liability phase of trial in evaluating whether the seizures were lawful, should the jury find that defendants did not execute an illegal, warrantless search.  *See* discussion, *infra*, II.D.  For this reason, plaintiffs' motion will be DENIED.

### D. MIL to exclude evidence of Provost's alleged excessive forc, other than personal observations or experience ((dkt. #103) ¶ 2)

In this motion, plaintiffs seek to exclude evidence relevant to their excessive force claim, other than personal observations or experience, on the basis that "any other evidence is irrelevant and would be unfairly prejudicial to Plaintiff Patricia Westmore."  (Pls.' Br. (dkt. #103) at 3.)   Inexplicably, plaintiffs add that "[t]his also means only the

5

four remaining parties who actually witnessed or experienced the incident . . . should be allowed to testify concerning the issue of whether Deputy Terri Provost used excessive force by throwing Patricia Westmore on the ground on December 27, 2013. (*Id.*) As a general matter, the court would agree that personal observations would be the most relevant evidence regarding Patricia Westmore's excessive force claim against defendant Provost. Yet the court can identify *no* legitimate reason to limit evidence to the personal observations of the parties, especially when, according to the facts in the record at summary judgment, other individuals including the veterinarians on site may have witnessed Provost's alleged use of force. Having failed to present any specific, much less persuasive, arguments in support of excluding others' observations to Provot's alleged use of force, plaintiffs' motion will be DENIED.

## II. Defendants' Motions *in Limine*

### A. MIL to exclude evidence regarding the circumstances surrounding the removal or euthanasia of plaintiffs' animals and resulting damages ((dkt. #64) ¶ 1)

Defendants argue that the court should exclude all evidence regarding the seizure of plaintiffs' animals on the basis that "federal causes of action do not exist in regards to alleged property damage or wrongful seizure of property, if the remedies available under state law are sufficient." (Defs.' Opening Br. (dkt. #66) at 3.) While the two cases defendants cite in support of their purported statement of law stand for the principle that adequate, post-deprivation state remedies may "satisfy the requirements of due process," they do not foreclose plaintiffs from, as here, seeking damages for illegal seizures under the Fourth Amendment. *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981), *overruled in part*

*on other grounds by Daniel v. Williams*, 474 U.S. 327 (1986); *see also Mahnke v. Garrigan*, No. 09-cv-408-wmc, 2010 WL 2634618, at *6 (W.D. Wis. June 28, 2010).  Indeed, a number of courts have refused to apply the *Parratt* doctrine to Fourth Amendment claims, since the due process concerns in which that doctrine is grounded do not overlap with the substantive rights guaranteed by the Fourth Amendment.  *See, e.g., Wolf-Lillie v. Sonquist*, 699 F.2d 864, 871-72 (7th Cir. 1983).  Accordingly, defendants' motion will be DENIED, except to exclude evidence more probative of damages to that phase of the trial.

### B. MIL to exclude evidence regarding defendant Provost's alleged use of excessive force ((dkt. #64) ¶ 2)

Although the court denied summary judgment on Patricia Westmore's excessive force claim, defendant seeks to exclude all evidence regarding defendant Provost's alleged use of excessive force, asserting that "[i]n order to establish use of excessive force, she needs to establish first of all that she suffered bodily injury."  (Defs.' Opening Br. (dkt. #66) at 4.)  Not only do defendants cite *no* legal authority for this conclusion, but it is contradicted by a number of cases in the Seventh Circuit.  *See Chelios v. Heavener*, 520 F.3d 678, 690 (7th Cir. 2008) (collecting cases suggesting that physical injury is not required for a finding of liability for excessive force under § 1983).  Accordingly, defendants' motion will be DENIED.[3]

---

[3] Of course, defendants are free to argue that the jury should infer a lack of excessive force from plaintiffs' failure to prove injury, or deny any award of compensatory damages for the same reason.  *See Chelios*, 520 F.3d at 690, ("[I]njury is a relevant factor in determining whether an officer used excessive force[.]").

### C. MIL to exclude evidence regarding any criminal convictions of Gina Benson ((dkt. #64) ¶ 3)

Defendants seek an order precluding plaintiffs from introducing any evidence of Gina Benson's criminal convictions to impeach her character for truthfulness.  Since neither party intend to call her as a witness, however, this motion is DENIED as moot.

### D. MIL to exclude evidence regarding veterinary care of plaintiffs' animals ((dkt. #64) ¶ 4)

Defendants next seek to exclude evidence plaintiffs may introduce regarding any veterinary care their animals were receiving on grounds of both relevance and hearsay.  In response, plaintiffs merely direct the court to sections A and B of their brief in opposition to defendants' motion for summary judgment, which concern plaintiffs' Fourth Amendment search and seizure claims.

Still, the court does not agree with defendants that *all* conceivable evidence of veterinary care that plaintiffs' animals were receiving lacks relevance under Rule 401. First, if credible evidence exists of regular, meaningful care of these animals, and their overall health, it may bear on the credibility of David Hyde's claim that exigent circumstances existed justifying his first search, as well as the claimed need for the second search.  Second, although defendants Provost and David Hyde had a right to defer to Szenay's and Jahnke's recommendations to put down plaintiffs' donkey and seize their horses, plaintiffs *might* still challenge the reasonableness of defendants' deference, if the evidence of ongoing, appropriate veterinary care of the animals was manifest before the seizures.

Of course, all of this also depends on the timing and strength of plaintiffs' evidence of that care, and possible prejudicial impact of such evidence to the narrower questions of the good faith and reasonableness of defendants' actions as public officials. Accordingly, the court will RESERVE on defendants' motion subject to a proffer by plaintiffs and argument by the parties at the final pretrial conference regarding the specific evidence of veterinary care.

### E. MIL to exclude evidence regarding a letter sent to plaintiffs' counsel ((dkt. #64) ¶ 5)

Defendants seek an order excluding any reference to letters attorney Charles Harris sent to plaintiffs' counsel on April 11 and May 5, 2014, on 401 and 403 grounds. While defendants provide no detail about the content of those letters, nor of their specific concerns, plaintiffs argue in response that the letters "relate directly to defendants' actions in opposing plaintiffs' efforts to petition for the return of their horses," as well as concerns plaintiffs expressed through counsel with regard to the ongoing "welfare of their horses while . . . held in defendants' custody and control, and plaintiffs' efforts to assert their legal and Constitutional rights."  Although substantially less relevant, plaintiffs add that Harris also made "a false assertion" about the status of plaintiffs' horses in one of his letters.  (Pls.' Opp'n Br. (dkt. #91) at 4.)  In light of the court granting summary judgment to defendants on plaintiffs' due process claim, the issues plaintiffs identify are no longer relevant to the claims that remain for trial. Accordingly, this motion will be GRANTED as to the liability phase of trial and RESERVED as to the damages phase pending a proffer by plaintiffs' counsel.

### F. MIL to exclude any argument that plaintiffs did not consent to defendant David Hyde's search on December 26, 2013 ((dkt. #64) ¶ 6)

Defendants further seek an order excluding plaintiffs from making any argument that they did not consent to David Hyde's first search of their property on December 26, 2013, claiming that plaintiffs acknowledged consenting in their complaint. The paragraph to which defendants cite states that plaintiffs assert they "reluctantly agreed to show David Hyde their horses and their mammoth donkey[.]" (Amended Compl. (dkt. #13) ¶ 18.) As explained in the court's summary judgment decision, however, this single allegation does not preclude plaintiffs from arguing that they did not freely consent to David Hyde searching their property, nor that it was reasonable for Hyde to believe otherwise. As a result, this motion will be DENIED.

### G. MIL to exclude evidence regarding prior criminal charges against Gina Benson, Tyrone Irons and David Hyde ((dkt. #64) ¶ 7)

Consistent with defendants' motion to exclude evidence of Gina Benson's criminal convictions, defendants also seek to exclude any evidence of criminal *charges* against Gina Benson, Tyrone Irons and David Hyde under Rule 609. This motion appears well-founded as to Benson and Irons, since plaintiffs do not even attempt to argue for the admission of any charges brought against them.[4]

In response to defendants' argument that David Hyde's criminal conviction from 1979 should be excluded, however, plaintiffs assert that his "criminal record of theft" constitutes "a dishonest act [and] has probative value in the context of plaintiffs' claims

---

[4] In addition to not calling Benson, both parties confirm that they will not call Tyrone Irons as a witness.

10

in this case[.]"  While the court is highly skeptical that any Rule 609 exception allows for the admissibility of evidence of a criminal charge after ten years, it cannot resolve this motion without knowledge of the specific facts and circumstances surrounding the charge(s), conviction or convictions that plaintiffs intend to introduce at trial.  Therefore, the court will RESERVE on defendants' motion pending plaintiffs making a proffer at the final pretrial conference of the specific facts.

### H. MIL to exclude any evidence regarding the death of Blacky, plaintiffs' horse ((dkt. #64) ¶ 8)

Defendants bring a separate motion for an order excluding evidence surrounding the death of plaintiffs' horse, Blacky, on the basis that plaintiffs did not disclose any expert witness to establish the cause of Blacky's death.  In response, plaintiffs argue that Blacky's death is "highly relevant to plaintiffs' illegal seizure and denial of due process claims against defendants," and they respond that there is no need to prove the cause of Blacky's death, but only that he died while in the county's custody.  As already discussed, the court granted summary judgment to defendants on plaintiffs' due process claim.  As importantly, plaintiffs have failed to attribute the cause of Blacky's death to any act or omission by *the named defendants*, either during the course of any alleged unlawful trespass or Blacky's seizure.  As a result, Blacky's subsequent death is not relevant to defendants' alleged illegal trespress or seizure, and their motion will be GRANTED as to the liability phase of trial.  The court will RESERVE as to any arguable relevance of this proof in the damages phase of trial.

**I.  MIL to exclude any argument that 42 U.S.C. § 1983 is plaintiffs' only remedy ((dkt. #64) ¶ 9)**

Defendants also anticipate plaintiffs arguing that 42 U.S.C. § 1983 is their "exclusive or sole remedy," while seeking to exclude any argument on the basis that state remedies were adequate to afford plaintiffs due process.  The court granted summary judgment to defendants on plaintiffs' due process claim, however, rendering this motion moot.

**J.  MIL to exclude any evidence regarding insurance ((dkt. #64) ¶ 10)**

Plaintiffs do not oppose this motion, and so it will be GRANTED.

**K. MIL to exclude any testimony regarding plaintiffs' feelings about the seizure of their animals ((dkt. #64) ¶ 11)**

Defendants also seek to exclude plaintiffs Patricia and Dwight Westmore from testifying about their emotions regarding defendants' seizure of their animals.  In support of their motion, defendants cite to *Rabideau v. City of Racine*, 2001 WI 57, 243 Wis. 2d 486, 627 N.W.2d 795, for the proposition that in the event the jury finds liability on plaintiffs' illegal seizure claim, they would only be entitled to the value of their animals as traditional property under Wisconsin law.  In response, plaintiffs cite *Moreno v. Hughes*, Case No. 14-cv-13829, 2016 WL 212932 (E.D. Mich. Jan. 19, 2016), in which the district court held that a plaintiff could seek compensatory *and* punitive damages for resulting emotional distress based on the unlawful shooting of plaintiff's dog.  *Id.* at *4. In support of this holding, the *Moreno* court also cited *Henning v. Nicklow*, Cause No. 1:08-CV-180, 2009 WL 3642739 (N.D. Ind. Oct. 30, 2009), in which the district court

12

denied the defendants' motion *in limine* "with respect to [p]laintiffs' testimony concerning (1) [their dog's] characteristics 'as a companion, pet, and watch dog' to the extent it assists in determining the value of the dog at the time of the loss, *and* (2) [p]laintiffs' emotional distress attributable to the actual constitutional violation, rather than the ongoing denial of the dog's companionship." *Id.* at *5 (emphasis added).

Notwithstanding that *Rabideau* dealt with state law claims for damage to property and not constitutional claims, the approach of the *Moreno* case is consistent with other authority that is binding on this court. *See Memphis Cnty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306-07 (1986) ("[C]ompensatory damages may include not only out-of-pocket loss and other monetary harms, but also injuries such as impairment of reputation . . ., personal humiliation, and mental anguish and suffering.") (alteration in original) (internal quotation marks and citation omitted); *Carey v. Ciphus*, 435 U.S. 247, 254 (1978) ("[M]ental and emotional distress . . . is compensable under § 1983[.]"); *Hessel v. O'Hearn*, 977 F.2d 299, 301-02 (7th Cir. 1992) ("[I]f your home is illegally invaded . . . you can seek substantial compensatory damages without laying any proof of injury before the jury[.]").  Accordingly, if the jury finds liability on any of plaintiffs' illegal search and seizure claims, plaintiffs may testify about any mental or emotional injury they suffered as a direct result of any constitutional violations.  This motion will be DENIED.

### L.  MIL to exclude any argument that plaintiffs' gray horse did not receive proper care while in the custody of Ashland County (dkt. #78)

Finally, defendants seek an order excluding any argument that one of plaintiffs' horses, sometimes referred to as "gray" or "white" and known as both "Ali" and "Guffy,"

did not receive proper care while in Ashland County's custody.  As with any evidence concerning Blacky's death, evidence of the quality of the treatment plaintiffs' horses received after their seizure is not relevant to the liability of the named defendants, Provost and David Hyde, who had no personal involvement in the care of plaintiffs' animals after seizing them.  Accordingly, defendants' motion will be GRANTED as to the liability phase of trial.  The court will RESERVE as to any arguable relevance of this proof in the damages phase of trial.

## ORDER

IT IS ORDERED that:

1) Plaintiffs' motions *in limine* (dkt. #72) will be GRANTED IN PART, DENIED IN PART and RESERVED in part, consistent with this opinion;

2) Plaintiffs' motions *in limine* (dkt. #103) will be DENIED;

3) Defendants' motions *in limine* (dkt. #64) will be GRANTED IN PART, DENIED IN PART and RESERVED IN PART, consistent with this opinion; and

4) Defendants' motion *in limine* (dkt. #78) will be GRANTED IN PART and RESERVED IN PART, consistent with this opinion.

Entered this 12th day of May, 2016.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge

14