IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PATRICIA A WESTMORE and DWIGHT R. WESTMORE,

      Plaintiffs,

v.

DAVID HYDE, CALLAE K. HYDE, SHERIFF MICHAEL BRENNAN, DEPUTY TERRI L. PROVOST, and ASHLAND COUNTY, WISCONSIN,

      Defendants.

OPINION AND ORDER

14-cv-861-wmc

---

Following a five-day trial, a civil jury concluded that defendants David Hyde and Terri Provost search of plaintiffs' property was reasonable and that those defendants, as well as defendant Callae Hyde, had reasonably seized (or authorized the seizure of) plaintiffs' donkey and horses. (Special Verdict -- Liability (dkt. #140).) On May 27, 2016, the clerk entered final judgment on all claims in favor of defendants. (Dkt. #146.) Plaintiffs Patricia and Dwight Westmore subsequently filed post-trial motions to alter or amend the judgment, which purport to challenge: (1) the jury's verdict as to their Fourth Amendment unreasonable search claims; and (2) the court's earlier grant of summary judgment on plaintiffs' claim for denial of procedural due process in connection with defendants' seizure of their donkey (*See* 5/5/16 Op. & Order (dkt. #93). (Dkt. #154.) For the reasons explained below, the court will deny plaintiffs' motion.[1]

---

[1] Also pending before the court is defendants' bill of costs (dkt. #148), and plaintiffs' motion to stay execution of judgment awarding defendants' costs as the prevailing party (dkt. #151). The

OPINION

Plaintiffs technically moved the court to alter or amend the first three answers on the Special Verdict form to "Yes" and to amend the court's judgment, citing Federal Rule of Civil Procedure 59(e), even though Rule 59 authorizes district courts to amend *judgments*, not *verdicts*. *See Frazier v. Boyle*, 206 F.R.D. 480, 492 (E.D. Wis. 2002). In the same motion, plaintiffs alternatively seek an order for a new trial. Under Rule 59(a), a party may be entitled to a new trial "if the verdict is against the clear weight of the evidence or the trial was unfair to the moving party." *Whitehead v. Bond*, 680 F.3d 919, 927 (7th Cir. 2012). To prevail on a Rule 59(e) motion to amend judgment, a party must "demonstrate a manifest error of law or present newly discovered evidence." *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 505 (7th Cir. 2011); *see also Harrington v. City of Chi.*, 433 F.3d 542, 546 (7th Cir. 2006) (a Rule 59(e) motion must "clearly establish" a manifest error of law). Regardless, plaintiffs are not entitled to relief under the applicable standards of review.

## I. Unreasonable Search

### A. Jury Instructions

Plaintiffs argue that the court's instructions to the jury contained two material misstatements of law: (1) the closing liability instructions confused the jury by explaining the "plain view" doctrine in connection with a search, rather than a seizure;

---

court effectively granted the latter motion by virtue of the court delaying ruling on the bill of costs until it had decided plaintiffs' post-trial motion. Plaintiffs, however, offered no objections to defendants' bill of costs. Moreover, the court finds the costs to be well-documented and limited to approved categories of expenses. As such, the court will grant defendants their requested costs in the amount of $4,666.16.

and (2) the court's response to a question from the jury added to that confusion by conflating the plain view doctrine with the "exigent circumstances" doctrine, which applies to both warrantless searches *and* seizures. Although the reasoning is difficult to follow and underwhelming, plaintiffs then assert that these errors "incorrectly suggested" the jury should find defendants' *searches* were not unreasonable "if defendants could merely 'see something' from plaintiffs' driveway." (Pls.' Opening Br. (dkt. #155) 8.)[2]

With respect to the closing liability instructions, plaintiffs emphasize the following language from the "Unreasonable Search" instruction, which concerns the extension of the Fourth Amendment's protection against unreasonable searches to areas beyond the home itself:

> Generally, there is no Fourth Amendment expectation of privacy for areas that can be viewed from a driveway, walkway or other areas that can be openly viewed by the public, including the visible interior of a barn or other structure when the doors are left open to public view. In determining whether a property owner has a reasonable expectation of privacy in a barn or other structure on their property, you may consider such factors as:
>
> - its proximity to the home;
> - whether it is fenced-in or closed;
> - whether anything obstructs access to or view of it; and

---

[2] Plaintiffs' arguments with respect to the court's closing liability instructions in their opening brief are confusing at best and underdeveloped at worst. *See Hess v. Kanoski & Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (citation omitted). As plaintiffs point out, the defendants' arguments in opposition to their motions are also poorly developed, but this does not relieve plaintiffs of the burden of persuading the court of their right to relief under Rule 59. *See Ajala v. Swiekatowsi*, 13-cv-638-bbc, 2016 WL 492319, at *4 (W.D. Wis. Feb. 5, 2016) ("[R]egardless whether defendant argued the correct standard, it was plaintiff's burden to convince the court that he was entitled to a new trial. Thus, even if [the court] disregarded defendants' brief, [it] would not grant plaintiff's motion unless he made the necessary showing."). If anything, plaintiffs' failure to develop its argument in the first instance partially explains the perfunctory nature of defendants' response.

- whether it is a typical location for a property owner to engage in private activities.

(Pls.' Opening Br. (dkt. #155) 5 (emphasis removed) (quoting Liability Jury Instructions (dkt. #142) 3).) Plaintiffs fail entirely, however, to articulate the reasons *why* they believe this portion of the instructions misstated the law, aside from insisting repeatedly that the "plain view" doctrine only applies to seizures, not searches, which on its face, at least, appears to be a *non sequitur*.

Even taking the plaintiffs' excerpted, underlined language out of context from the whole "unreasonable search" instruction, neither the words "plain view," nor the elements of the plain view doctrine are included; nor do they appear anywhere else in the court's unreasonable search instructions. On the contrary, the language only addresses the scope of the property owners' reasonable expectation of privacy in areas that can be viewed from a driveway or walkway, including unobstructed views into an open barn or other structure on the property. As reflected in the final jury instructions conference, the court adopted this instruction after plaintiffs objected to defendants' much broader proposal, which described the concept of access by "open field" on the theory that none of the pastureland or outbuildings granted any expectation of privacy. Thus, the portion of the instructions plaintiffs would emphasize concerns only whether a *search* occurred within the meaning of the Fourth Amendment, and it was specifically directed to assist the jury in thinking about what defendants *could* see from different positions on plaintiffs' property without implicating their reasonable "expectation of privacy." (*See, e.g.*, 5/26/16 a.m. Trial Tr. (dkt. #153) 42-43, 50-51.) Tellingly, plaintiffs did not object

to the introduction of the concept of an expectation of privacy, just to the court's attempt to better define that for the jury. (*Id*.)

Plaintiffs' citing of a Second Circuit case for the proposition that the "distinction between searches and seizures is of critical importance as a matter of law" under the plain view doctrine just furthers the confusion. In *Ruggiero v. Krzeminski*, 928 F.2d 558 (2d Cir. 1991), the court simply held that warrantless seizures do not violate the Fourth Amendment when the government official's "initial intrusion . . . [was] lawful so that he can justify being in a position to make his discovery" and he "had probable cause to believe that the item seized was evidence of a crime." *Id*. at 561 (citations omitted). That holding has no significance here. *First*, as noted previously, the language from the jury instruction in this case makes *no* reference, either explicit or implicit, to the plain view doctrine. Plaintiffs' description of it as the so-called "plain view" instruction derives from a shorthand label used by the parties and the court to refer to the language defining a reasonable expectation of privacy, as reflected in discussions about the liability jury instructions cited above. However legally imprecise this label might have been under Fourth Amendment jurisprudence, it does not make the instruction that the court actually gave erroneous as a matter of law, necessitating a new trial, much less a directed verdict. (*See* 5/25/16 Trial Tr. (dkt. #149) 236-37.)

*Second*, the pages from the trial transcript that plaintiffs' counsel cites to suggest that the court overruled an objection to this excerpted language being part of the *search* instruction is contradicted by the transcript of the trial. Indeed, counsel's sole objection was that "the plain view would only apply to the search, *not* the seizure," and so

plaintiffs' counsel asked this language to be "moved into the . . . search part [of the closing liability instructions]." (*Id.*) Thus, plaintiffs did not object to the inclusion of instruction describing a lawful search, but rather to its application in determining whether a "seizure" satisfied the Fourth Amendment. Specifically, after a long colloquy with the court about the risk the discussion of the definition of "privacy interest" set forth above might be applied by the jury to seizures, the court agreed to move that discussion under the search heading only, which satisfied plaintiffs' concern:

> THE COURT: All right. I'll start a new paragraph with the second sentence on page 3 which will read – which begins with, "The curtilage is the area," and at that point I will move the heading for unreasonable searches.
>
> MR. STODDARD: Okay. Thank you, Your Honor. I think that addresses it.

(*Id.* 238.)

To reinforce the distinction between a lawful search and seizure, the court further posed separate special verdict questions for each claim of an unlawful search, as well as each claim of an unlawful seizure, then emphasized in its instructions to the jury that they should refer to the *specific* applicable instructions in deciding the answer to each question. Accordingly, plaintiffs' current objection is both waived and meritless.[3] *See* Fed. R. Civ. P. 51(d)(1)(A); *see also Chestnut v. Hall*, 284 F.3d 816, 819-20 (7th Cir. 2002) ("Rule 51 requires not only that objections to jury instructions be made in a

---

[3] Plaintiffs' waiver also includes any argument that the challenged instruction did not fit properly with the facts of this case, as it seems to argue by citing *Siebert v. Severino*, 256 F.3d 648 (7th Cir. 2001), as a "perfectly analogous" case. (Pls.' Opening Br. (dkt. #155) 8.) On the contrary, *both* sides here presented evidence and argument to the jury at trial as to what defendants could see from various locations on plaintiffs' property for just this reason. (*See, e.g.*, 5/26/16 a.m. Trial Tr. (dkt. #153) 42-43, 50-51.)

6

timely fashion and on the record, but also with sufficient specificity to apprise the district court of the legal and factual bases for any perceived defect.").

B. Response to Jury Question

Plaintiffs also argue that the court somehow again misstated the law in responding to a jury question during their liability deliberations. In its second such question to the court, the jury asked, "If you are able to 'see something' from the driveway, does that give you the right to go further onto the property and look more closely at it?" (Dkt. #141-9.) After a discussion with the parties, the court responded, "If what the person sees constitutes obvious 'exigent circumstances,' he or she may proceed further onto the property to address the exigent circumstances. Otherwise, the answer to question (2) is 'no.'" (*Id.*)

The term "exigent circumstances" was previously defined for the jury in the instructions. (*See* Liability Jury Instructions (dkt. #142) 4).) Nevertheless, plaintiffs argue that the court's response -- particularly in combination with the language about what constitutes an unreasonable search -- somehow "incorrectly suggested to the jury that the first three questions on the Special Verdict form [asking whether the named defendants searches were unreasonable under the Fourth Amendment] should be answered 'No' if defendants could merely 'see something' from plaintiffs' driveway." (Pls.' Opening Br. (dkt. #155) 8.) The opposite is true.

First, while plaintiffs' counsel originally took the position that the answer to the jury's question should be a flat "No," he ultimately did not object to the more nuanced answer, which after all was consistent with the court's original jury instructions, except to

7

ask for an even greater restriction than the law required -- that the exigent circumstance be "obvious."

> THE COURT: All right. Unless there's something further, I'll give those two answers then:
>
> To question 1: "A search is any entry onto property in which a person has a reasonable expectation of privacy. See current instructions."
>
> To question 2: "If what the person sees constitutes "exigent circumstances'" -- the last two words in quotes -- "he or she may proceed further onto the property to address that exigent circumstance."
>
> MR. STODDARD: Your Honor, excuse me. I thought you were going to leave the word "obvious exigent circumstance."
>
> THE COURT: I did. I'm sorry, I did say that. If I didn't say that, I will include that in the instruction.
>
> MR STODDARD: Thank you.

(*Id*. (dkt. #157) 60.)

Second, the assertion that the court's response to the jury's question suggested that defendants did not commit an unlawful search if they could "merely 'see something' from plaintiffs' driveway" completely ignores the instruction that the court actually gave. Specifically, the court emphasized that a further inspection would be warranted *only* when that "something" constituted "obvious 'exigent circumstances.'"

Plaintiffs also argue that the response was confusing because the exigent circumstances doctrine applied to both searches and seizures, but they fail to explain what part is confusing. If anything, referring the jury to the applicable "exigent circumstances" definition in the written instructions -- multiple copies of which had already been provided for use by the jury during deliberation -- would seem a correct

8

response to the jury's vague and generic question, not to mention the best way to avoid confusion. Accordingly, plaintiffs' argument that it is entitled to a directed verdict or new trial based on the liability instructions or the court's response to the jury's second question both fail.

C. Sufficiency of the Evidence

Finally, plaintiffs argue that the jury's verdict that David Hyde and Terri Provost reasonably searched the barn under the Fourth Amendment was against the clear weight of the evidence, entitling it to a new trial under Rule 59(e). Specifically, plaintiffs argue that defendants failed to prove any of the exceptions to the warrant requirement with respect to the December 27, 2013, search of the barn where the donkey was located, including that plaintiffs gave consent for veterinarian Lesley Szenay to search that barn.

Plaintiffs' argument principally depends on their characterization of defendant David Hyde's testimony from the second day of trial, stating that he authorized veterinarian Lesley Szenay to stay on plaintiffs' property on December 27, 2013, despite plaintiff Patricia Westmore telling him that she did not want her there. (5/24/16 p.m. Trial Tr. (dkt. #150) 24:1-17.) Plaintiffs also assert this characterization was corroborated by Deputy Provost's incident report, which noted Hyde advised by phone before arriving on December 26 that "he and a vet from Polk County were at the residence this past Sunday and he feels that the owner is going to give the vet problems because when they were out there on Sunday[,] Patricia told the vet that she is not allowed on the property anymore." (Pls.' Exs. (dkt. #144) ECF 19.) Finally, plaintiffs further point to Szenay's testimony that she could not recall asking to examine the

donkey, nor could she recall plaintiffs asking her to return to their property on December 27. (5/24/16 p.m. Trial Tr. (dkt. #150) 94:17-22.)

What plaintiffs choose to ignore, and the jury was free to credit, is veterinarian Szenay's testimony that she was unaware plaintiffs wanted her to leave on December 27. (*Id.* at 94:23-25.) More importantly, defendant David Hyde also testified at trial that while Patricia Westmore initially said that "I don't want that bitch on my property," when asked on December 26 whether he could return the following day with veterinarian Szenay to examine her animals, Westmore ultimately responded "okay" after being told that Hyde would also bring another veterinarian for a second opinion. (5/25/16 a.m. Trial Tr. (dkt. #149) 5:1-24.) David Hyde further testified that Patricia Westmore was present when Szenay arrived to examine the animals, and she said *nothing* at all about Szenay being on her property, much less withdrawing her consent to Szenay joining another veterinarian in conducting an examination of the animals.[4] (*Id.* at 9:13-14, 10:12-15.)

Certainly, the jury could have credited Westmore's version, as corroborated by some other evidence, that plaintiffs never consented to Szenay being on the property on December 27. At the same time, the jury was charged with making sense of this arguably

---

[4] Contrary to plaintiffs' assertion that David Hyde "made it very clear" that Patricia Westmore asked "what's that bitch doing here?" on December **27**, the day of veterinarian Seznay's inspection, rather than the day before, Hyde testified at trial that he believed his earlier deposition testimony to this effect was incorrect and that Westmore's question was instead about Gina Benson's presence; he then reiterated that Patricia Westmore did not say anything about wanting Szenay to leave on the 27th, including making any indication that she was withdrawing her consent given the day before. (5/25/16 a.m. Trial Tr. (dkt. #149) 47:13-22, 48:7-17.) As the jury was instructed, it was up to them to accept whichever of these statements by Hyde they found more believable. (Introductory Jury Instructions (dkt. #137) 7.)

inconsistent testimony. In light of Szenay's and David Hyde's testimony that Patricia Westmore did not object to her being on the Westmore's property to examine her animals, and indeed had consented to her coming on the 27th with another vet the day before, plaintiffs are wrong to assert that "the jury simply could not reasonably believe there was consent for Lesley Szenay to be on the property, conduct her search, and go into and search and examine Jethro inside plaintiffs' enclosed shed or barn on December 27, 2013." (Pls.' Opening Br. (dkt. #155) 12.)

Since plaintiffs raise no other challenge to the evidence supporting the consent element of its unreasonable search claims, they have failed to establish that the jury's verdict is against the clear weight of evidence. *See Marcus & Millichap Inv. Servs. of Chi, Inc. v. Sekulovski*, 639 F.3d 301, 313-14 (7th Cir. 2011) ("We have explained that appellants . . . bear a particularly heavy burden because a court will set aside a verdict as contrary to the manifest weight of the evidence only if no rational jury could have rendered the verdict.") (internal quotation mark and citation omitted); *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 440 (7th Cir. 2010) ("We uphold a jury verdict on appeal as long as a reasonable basis exists in the record to support this verdict."). Accordingly, plaintiffs' motions with respect to their unreasonable search claims must be denied.

**II. Due Process**

Plaintiffs also move for reconsideration of the court's grant of summary judgment on their claim that defendants denied them due process before seizing and euthanizing their donkey. As already explained, a party "must clearly establish either a manifest error

11

of law or fact or present newly discovered evidence" to prevail on a Rule 59(e) motion.[5] *LB Credit Corp. v. Resolution Tr. Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995) (citation omitted). Furthermore, the Seventh Circuit has made clear that Rule 59(e) motions "are not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment, or to present evidence that was available earlier." *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012) (internal quotation mark and citation omitted).

Plaintiffs' motion identifies no arguments or facts that the court overlooked on summary judgment, nor any newly-discovered evidence that could not have been presented at summary judgment. Instead, the motion is comprised entirely of arguments that plaintiff failed to make at summary judgment, and although plaintiffs cite trial testimony from the two veterinarians who recommended euthanasia of their donkey as "new evidence," any new facts regarding the circumstances of the seizure and euthanasia of plaintiffs' donkey that are arguably contained in their testimony: (1) could have been presented at summary judgment, (2) were not in dispute at summary judgment, and (3) were viewed in the light most favorable to plaintiffs at summary judgment.

Even if the court were to consider the veterinarians' trial testimony and plaintiffs' belated arguments, they would still fail to establish that plaintiffs were entitled to some additional, pre-deprivation process. Put differently, the law does not clearly establish

---

[5] Plaintiffs purport to move for a "new trial" on their due process claim under Rule 59(a), but that rule does not provide an avenue to challenge the court's summary judgment decision. *See Goldberg v. 401 N. Wabash Venture LLC*, No 09 C 6455, 2013 WL 4506004, at *24 (N.D. Ill. Aug. 23, 2013) ("Rule 59(a) is not the appropriate mechanism for addressing a summary judgment ruling.") (collecting cases). Regardless, plaintiffs' Rule 59(e) motion was filed timely after entry of final judgment, and so the court will consider their arguments under that standard.

plaintiffs' entitlement to something more than a contemporaneous opportunity to object to the independent veterinarians' expert recommendations for euthanasia because an animal is unduly suffering from a condition that cannot be addressed by medical intervention.  (*See* Summ. J. Op. (dkt. #93) 25-27.)  Regardless, since there was no evidence that two, independent veterinarians made anything but the humane choice, the named defendants were *at least* entitled to qualified immunity in relying on the consensus medical judgment of two qualified veterinarians.  Thus, having failed to demonstrate that reconsideration is appropriate, plaintiffs' Rule 59(e) motion must also be denied.

ORDER

IT IS ORDERED that:

1) Plaintiffs' motion to alter or amend final judgment or for a new trial (dkt. #154) is DENIED.

2) Plaintiffs' motion to stay execution of the judgment (dkt. #151) is DENIED as moot.

3) Defendants' Bill of Costs (dkt. #148) is GRANTED in the amount of $4,666.16.

Entered this 21st day of September, 2017.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge